May it please the Court. My name is Chris Troupas. I'm the attorney for Starlene Howe. I am the appellant in this case. I think I thoroughly discussed most of the matters that are at issue before the case in the briefing. I would like to address two matters that have developed since. Just two cases that in reviewing and looking to see whether or not there had been any case that had changed the status of the law on the issue of the standard of review. I noted that two weeks ago the district court in the Northern District of California decided Flores v. Prudential. Although I know that's not presidential authority for the court, the court did cite the Kearney and the Ingram cases at length. Well, counsel, if under Kearney or standard, whatever we call it, if this just ain't an award of discretion. That's correct. If it just isn't so that de novo review is required, I'll ask you a question I asked counsel before on the other case. If we say, yep, that's right, standard of review is de novo, isn't that at the end of our review we just send it back to the district court and say, do it under a de novo standard? Absolutely correct, Your Honor. That is exactly what happens. And that was most recently stated in the Jebion. Most of the details about the court decision, all that stuff isn't for us at this point. It would just be for the district court and that's the end of it. Is that right? I believe so. And I think, Your Honor, in the Jebion v. Hewlett-Packard case, which was decided a month after the appeal in this case was filed, the court reiterated that, citing the Mangaluso decision. And I'm sorry, Your Honor, we did not brief the Jebion case. And that was because in my review I didn't discover it, although it was, it is 349 F3rd 1098 and was decided in November 2003. And in that case, the court said on that while under the abuse of discretion standard, they talked about the Mangaluso case and said that the appropriate thing was to send it back to the district court to take additional evidence when circumstances clearly established that additional evidence is necessary to conduct the investigation. If the district court takes additional evidence under Mangaluso or not, it seems to me is again a question. Why wouldn't that be a question for the district court in the first instance? That is. The court looks at it and says, you know, I know I'm not supposed to take it normally, even on de novo review. Should I take it? That is the case. That's why, Your Honor, in the posture of this case, there was a motion to strike my expert affidavit. And that motion was granted by the judge solely on the basis that the standard of review was abuse of discretion. Well, he might strike it again on a different standard. He may still do that, Your Honor. And I made reference to the accident reconstruction report of the state police, which the insurance company never obtained. And he may not want to see that either. My question is, why do we want to – if you're right about issue one, I understand you might not be and you want to cover your basis. Right. Colleagues may not agree that you're right on issue one. But if you're right on issue one, then you go there, do you? The entire argument addresses – it's absolutely correct, and I totally agree with that. And in an abundance of caution, I guess I'm simply further discussing it. The – this case was decided below on the – a term of responsibility. And I believe the plan language was that they had the responsibility for full and final determination of eligibility for benefits. And there – our point is that there's ample case authority that says use of the term final is not sufficient to confer discretion. The Sandy case clearly says that unless it's unambiguously conferred, the standard of review is de novo. And my argument would be that response – The rest exclusively. Yes. It says exclusive, Your Honor. But exclusive is – So talking about it without sort of taking into account the words that are worse for you doesn't really advance your case. I mean, it says responsibility, full and final determination, and so rest exclusively without that. Correct. How do you get around rest exclusively? Well, exclusively simply is no more than an allegation – allocation of responsibility. In other words, it says that the employer, for instance, is not making the decision, a third party isn't making a decision. ALTA is making the decision exclusively. The court isn't making the decision? It's not saying that at all. That's the same – Why isn't it saying that at all? Well, it's – Exclusively is exclusively. But it says – Why do you want to say it's exclusive of these people, not exclusive of other people? The Ingram case clearly says that the use of the terms, for instance, full and final – Let's say you start dating exclusively, right? I'm sorry, Your Honor. Let's say you're dating, right? You're dating somebody exclusively. Yes. Does that mean, you know, it's exclusive except for the guys next door? No, Your Honor, that – Ah, exclusively means exclusively. It's exclusively so long as it's within the administrative process. But it doesn't say what standard is to be applied within the administrative process. Why do you say that? Well, it's – Well, I mean, obviously, even exclusively within the administrative process is not exclusive because you do a review for abuse of discretion. So, obviously, you can't make it truly exclusive. You can't exclude the court altogether. No, you can't, Your Honor. But the point is that the term exclusive does not imply discretion. Exclusive merely says that – Full and final determination. Right. And it's only final until the court reviews it under Ingram and under Johnson v. Buckley. And so final doesn't really mean final. It means final for the administrative process. And exclusive means exclusive for the administrative process. Exclusive doesn't mean exclusive and we get to apply whatever standard we please. Exclusive simply means the court's not going to be involved until we're finished. What do you do with Atwood? With what, Your Honor? Atwood. With Atwood – the Atwood case said that he was the – that the plan would be the sole and exclusive judge. And I posit to you, Your Honor, that if you look at the definition of the term judge, that it is different. You know, they didn't – Atwood doesn't talk about the word judge. That's something you made up. It is? What do you think, we imagined that the administrator was sitting there putting on a robe? What Atwood focused on was the use of the word exclusive. Where do they focus on judge? Show me. On page 1321 of Atwood, Your Honor, it says – it refers to the policy. Subsection 2.2 states that an employee who is terminated for cause shall not be eligible for severance benefits and defines cause. Subsection 2.2 states that – that Newmont shall be the sole and exclusive judge as to whether or not a termination is qualified for benefits under the terms of the plan. Was judge underlined there? You emphasized it. A sole and exclusive judge. Exclusive modifies judge. Does it – was a big underline? Was it bold? No, it's a quote. Sole and exclusive judge. Neither term is underlined. But exclusive modifies – Because when you read it, you said sole and exclusive judge. I'm sorry. That was your – That was my interpretation of it. What is it in the case, other than the fact that they quote the language that suggests that the use of the word judge in there had any significance at all, as opposed to what obviously they're talking about, the most obvious thing is the word sole and exclusive. Because the word exclusive is a modifier to the word judge, sole and exclusive judge. And it simply identifies another – the major problem, which is that it – that the language responsibility to determine eligibility creates ambiguity. You're telling me that you use sole and exclusive standing alone, as in rest exclusively. That's more restrictive than if you say sole and exclusive judge, because judges are all powerful? I don't – I don't get it. I don't think – Isn't the key word, isn't what made – what Atwood turned on the fact that he used the word exclusive? And he said exclusive means it knocks out other people. It means exclusive. It means it's like dating. You know, you're just going steady. Nobody else. That's what exclusive means. But I – It was nothing in the case that turned on the use of the word judge. I respectfully disagree, Your Honor. Show me. Well, I respectfully disagree. Show me where they talk about judge. Other than quoting it, where they say, oh, well, here they said judge. Judge, of course, we know, gives you lots of exclusivity and power and authority and dignity. Do they say any of that stuff? I couldn't point you to a case that uses the word judge in another case. In that case, Atwood, you relied on Atwood. I said, what do you do about Atwood? And he said, oh, Atwood is distinguishable because he used the word judge. But is there anything in Atwood that focuses in the least on the word judge, other than the fact that they quoted as part of the whole phrase? My point, Your Honor, is I don't – Is there anything? No, Your Honor. Okay. No. My point is – How do you get around Atwood? Because we have a difference of opinion as to whether the term judge is the same as using the term authority, discretion, or power as the sanity court referred to. So, in other words, if – And if – Your Honor's point – If I should look at it and say the word judge there made no difference at all, the key is the word exclusive, then you lose, right? No. No? Because I don't think – I just want to make sure that I have all the arguments. I understand you disagree with that, but if I should decide the word judge there has no meaning to add, that the key word is exclusive – I do not think that Atwood creates discretion in a policy that simply says we have exclusive responsibility to determine eligibility for benefits. And I don't know that – Why not? Exclusive responsibility. I don't think that that – that – I don't know its discretion. Why not? Because under either case, exclusive is no different than the use of the word final. And the word final, as the Court said in Ingram, was – Well, what do you do about Atwood? Atwood says exclusive. Again, since I don't buy the word judge as making any difference, doesn't Atwood tell us that exclusive does, in fact, have authority? If we go back to Atwood, Atwood was clearly reviewed. Here's a case cited, 46 Federal Reporter 3rd. Clearly, there was a district court that reviewed the decision in Atwood. Now, they reviewed it even though the administrator said he had exclusive authority. They reviewed it. Now, admittedly, the Court reviewed it using – or abuse of discretion review. But they reviewed it. Nobody argues that there's absolutely zero review. But my point – The dispute all along has been, does the district court review the novel or does the district court review for abuse of discretion? And my point is that the language in the policy must unambiguously tell the Court which standard of review applies. And we have a difference of opinion as to whether the word exclusive should be added to the catalog of words that the Sandy Court listed, authority, power, and discretion. Whether that word – I thought Atwood resolved that. Well, the Sandy Court didn't refer to the word exclusive as being in the Atwood case as conferring discretion. The Sandy Court simply said unless you use the words authority, power, or discretion in some substance, you do not have it. And the Atwood – the Sandy Court also said that discretion must be unambiguously conferred. And I would posit to you that use of the word exclusive creates nothing more than ambiguity, the same ambiguity that responsibility can create. What's ambiguous about exclusive? I don't understand. Because – because – What's so hard about – Because – I don't understand. We make the decision. No one else does. It's exclusive. Because every insurance company, every fiduciary makes their decisions exclusively under policies reviewed de novo and policies reviewed with abuse of discretion. Every one of them makes those decisions exclusively. Okay. No one else participates. Give me a case where we have found de novo review even though the authority was, given to the Administrator, was exclusive. I haven't – I couldn't cite the court to – Well, you said every. You know, you just stood there and you said every policy does this. So give me a case – give me a case where we said they used the word exclusive and yet we reviewed de novo. That may be a matter of first impression. I haven't researched it because I didn't – But you're making an argument. You say every policy. My argument is not as to what the case is reviewed. My argument is that there are insurance company policies that explicitly grant discretion. And in those policies, it is only the Administrator, only the Administrator, who reviews to determine eligibility for benefits. No. They're being exclusive. I don't think you're following me. If every policy has that, then it seems to me some of the cases where we've said de novo review must have had it, too, because they are within the universe of all. So why don't you show me a case where, in fact, that was the case. They cite the policy language. It is within the universe of all and, therefore, uses the word exclusive. And we, nevertheless, found – I didn't see it as – I didn't see that word as being the dispositive word. I did not research that word. If there are cases out there, what I'm telling the Court is I haven't noticed them. I'm not saying there aren't cases. Is Ingram the case? Ingram may be the case. Ingram said full and final authority. I'm not saying there's not a case. You're saying that particular question you can't answer accurately, so you're trying to mislead us. Well, that's exactly. I don't want to guess at it. I'm trying to do the best that I can. But I think Ingram and Sandy both say there has to be an unambiguous conference of discretion. I don't think the word exclusive does it. And they reject the word exclusive? In Ingram, the word is all. The policy says the carrier will make all decisions on claims. All seems to me to be the same as exclusive. Certainly not. Make all decisions. Certainly not. You can make all decisions but not have exclusive authority. Well, now you're using exclusive to modify it. They're really quite different concepts. You may have broad authority but not exclusive authority. If you make all decisions, then you are making – then you are exclusively deciding them. If you have all authority – you were saying all authority is exclusive authority. They're the same thing. You used one as a noun and the other as an adjective, so I respectfully disagree with your point, Your Honor. I would like to reserve the rest of my time for rebuttal. Thank you. May it please the Court, Counsel. The standard here is set by the Supreme Court's decision in Firestone. And in Firestone, they looked at two – the Court there set down two components to confer discretion. The authority to determine eligibility for benefits or to construe the terms of the plan. The plan here explicitly gives Anthem the responsibility for the full and final determination of eligibility and interpretation of terms. Who else would do it? I mean, somebody's going to – especially with insured plans. Of course, somebody's going to have to make the final decision for the plan. That's easy. That's – The Supreme Court couldn't have meant that. Or else every plan would, if so facto, have been discretionary abuse. They couldn't possibly have meant that. I mean, somebody's got to make a decision. Where does that take us? Well, I think what the Supreme Court – the Supreme Court chose language. Full and final determinations of eligibility or interpretation of terms. And in subsequent cases, I think those – that language has taken on special meaning. In cases that this Court decided relatively early after Firestone, the Jones case, the Court looked at the plan there and looked at the terms power to construe provisions of the trust and decided that discretion was conferred. Well, you know, in Snowe, we said the same kind of thing. But one wouldn't really want to rely on Snowe. After Kearney, I think not, Your Honor. But I don't think Snowe did say – what Snowe looked at was a proof of loss provision, sufficient proof of loss. Snowe – Kearney was a proof of loss case. Newcomb was a proof of loss case. Sandy was a proof of loss case. And after Kearney, it's clear that those proof of loss cases, that that language will not confer discretion. What about Ingram? Excuse me, Ingram may be your hardest problem. And it's unfair in the sense that Ingram comes out after the events in this case, after your plan is written. But Ingram, frankly, takes a lecturing tone toward insurance carriers or whoever is writing the policies and comes very close to saying if you don't use the word discretion, then you can't claim discretionary authority. It doesn't quite say that, but that's certainly the way it's trying to point. Now, exactly how the panel, Ingram, got to that point, I'm not entirely sure. But it does seem to say, look, it's not enough to say that you've got the responsibility to make the decisions. You have to speak directly to the issue of whether you have discretionary authority. You can read it that way. I mean, I think Ingram, the question is whether, based on Ingram, this circuit is now going to go to the point to where if the plan does not use power, authority, or discretion, the plan doesn't have it. And there is a couple of ways I think Ingram can be distinguished. First, there's nothing in the Ingram language, which is in the plan, and it's at 244F3-1112, that talks about the authority, the responsibility, the power to construe or interpret term plans. So it doesn't say that. And it is an allocation. They talk about an allocation of decision-making authority. You can look at our plan here, and in Section 12 of our plan, we talk about the processing of claims, how to file a claim. And then it's the last section of the plan at issue here, which is headed ERISA information, and it's under the heading How to Decide and Appeal. And we use very succinct, straightforward language that perhaps not the most artfully drafted, but given the fact that this plan went into effect in 1997 and the case law at that time, whoever drafted it was clearly attempting to trigger the standard set forth in Firestone, because they say specifically in one sentence, the responsibility for full and final determinations of eligibility for claims, semicolon, interpretation of terms, semicolon, determinations of claims, semicolon, and claims denied in whole or in part rest exclusively with anthem. And that was clearly an effort by the drafter of this plan to trigger the Firestone standard. The language in Ingram, it's more sort of wishy-washy language. You've got to look in different places to try to come to the discretion. The Ingram panel cited the Fifth Circuit's decision in Cathy, a 1990 case. And what Cathy did, there were three different sections of the plan that the plan administrator was relying on to sort of divine out the discretionary authority. I think that — Let's say you don't win this argument on discretionary authority. Let me just get you past that. I think we would know what the arguments are on that. Let's say that this is — what follows? Remand. I mean, I could make an argument. I think that the affidavit is insufficient. Are you now going to tell me the argument you're not going to make? You either make the argument or you don't make it. I won't make it, then. Tell me the argument you would make. I won't make it, then, Your Honor. So your view is if we disagree on the standard of review, we remand to the district court? Yes, sir. And then it has discretion whether or not to admit or not admit? Yes, sir. It's clear that what Judge Williams did is he kept that affidavit out based on the standard of review. And so we don't know what he would do under the de novo standard. And I think this Court would send it back, and I'm not going to argue to the contrary. Anything else you need to add? Well, I think Sandy is a good case. And three times in Sandy, they talked about — the panel, the Sandy panel talked about authority to determine eligibility. It can't help you that much if the other side is also arguing the same case. Well, I mean, I'm sure you've had people up here in front of you before, Your Honor, arguing the same case. But not usually both argue with the slam dunk for them. Well, he's wrong. I mean, Sandy — He could go either way, but I've seldom had both sides say, well, Sandy is it, and boy, it's a home run for us. Okay, why don't you tell me how it's a home run for you. Well, three times — Walk me through it. Three times. Three times. At 12.05. Well, I'm not going to draw any wider conclusions than that. Show me where. At the bottom of — at 12.05, the court says, here, unlike other plan provisions, we have held conferred discretion. There is no language conferring authority on reliance to determine eligibility to construe the terms of the plan or to make full and final binding decisions. Our plan does those things. Go on to the next page. The court cites a bunch of cases that I think support us, and they come down in the middle of page 1206. In the absence of some such language, Kearney does not permit discretion, et cetera. And then it goes, although the full and fair review language does not connote discretionary authority, it does not unambiguously grant reliance power to determine eligibility, power to construe the terms of the plan, or the power to make decisions that are final and binding. Our plan does that. We use the word responsibility. Is this case going to stand or fall on the use of the word responsibility? I hope not. And then again, right before the long footnote, they say, for sure, there's no magic to the words discretion or authority, but we're not at Hogwarts. Therefore, it should be clear, unless planned documents unambiguously say in some or substance that the plan administrator or fiduciary has authority, power, or discretion to determine eligibility or to construe the terms of the plan, the standard is de novo. Now, our plan does not say, use the words authority, power, or discretion, but I don't think that's the inquiry. I think the inquiry is, does it unambiguously retain the power to make eligibility determination and construe terms of the plan? And I'll let Mr. McFeely respond. Thank you. May it please the Court. I'm Neil McFeely, and I represent the employer and plan sponsor, Strategic Distribution. Why do they care? Well, the Court may have noted early on in the original pleadings that there may be an issue as whether who has the right. I read pleadings all the time. Pardon me? You mean like a complaint? Our answer, we also have a cross-claim. There may be an issue as to. I forgot. It was so long ago I read the complaint and the answer was here. Remind me. There may be an issue as to the responsibility for any amounts of medical benefits to be paid between the anthem alta and the whether we retain certain liability, Your Honor. So why do you have a dog in this race about how the contract is construed? Well, we concur with alta anthems. That's our dog in the race is that we're riding the same dog, Your Honor. I don't quite understand. Let's say that we disagree with you. And, in fact, I don't quite understand how your position is going to be affected. Your Honor, the original contract between alta anthem and strategic distribution allocates certain liability for any medical benefits, health benefits that are paid out. We obviously accept or concur with Mr. Squire's. I see. So whatever they pay out, the employer might be the insurer pays out. The employer might be liable for part of it. There is an issue there. Yes, Your Honor. Or there's an argument that they might be liable for part of it. So if they're not paying out anything, then you're off the hook. That's correct. I understand. That makes perfect sense. And if the court has no further argument. It's basically a self-funded plan, at least in part. Well, in part. All right. Thank you, Your Honor. May it please the court, I reserved a few minutes. If the court has questions for me, I'll answer them. Otherwise, I'll submit. Thank you, Your Honor. Okay. Thank you. Okay. Just a second. We'll stand for a minute. Next argument in. Jarrett.
judges: Kozinski, Fernandez, Clifton